Land Holding Corporation, Appellant, *v.* Board of Finance and Revenue.

Argued November 13, 1956. Before JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Bernard Wolfman,* with him *Samuel A. Goldberg, Marvin Katz,* and *Wolf, Block, Schorr & Solis-Cohen, Compton, Handler & Berman,* for appellant.

*Edward Friedman,* Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 18, 1957:

Land Holding Corporation, incorporated in Pennsylvania, appeals from the decree of the Court of Common Pleas of Dauphin County dismissing its complaint in mandamus upon preliminary objections filed by the defendant, Board of Finance and Revenue, to the jurisdiction of the court.

Summarized, plaintiff's complaint averred the following facts: Plaintiff is the grantee in a deed of certain property in Montgomery County, Pennsylvania; the deed was made, issued, executed, delivered, accepted and acknowledged outside of the Commonwealth of Pennsylvania, at the office of the grantor, the White Motor Company, in Cleveland, Ohio. On May 3, 1954 the deed was presented at the Office for the Recording

of Deeds of Montgomery County at Norristown; recordation was refused by the Recorder on the ground that the deed required stamps under The Realty Transfer Tax Act of December 27, 1951, P. L. 1742, as amended by the Act of May 29, 1953, P. L. 257. At that time under protest plaintiff through its agent paid $18,000 tax to the Recorder and affixed stamps in that amount to the deed as demanded by that official; on August 27, 1954 the plaintiff filed with the Board of Finance and Revenue a petition for refund of the tax so paid; on September 15, 1955 the Board refused the refund. The complaint further averred that there was no tax due on the transaction and that exaction and retention of the tax under the purported authority of the Act of December 27, 1951 or otherwise was unconstitutional and that it had no other adequate remedy at law for the relief sought.

The preliminary objections filed by the defendant to the jurisdiction of the court were: "First. The action of the Board of Finance and Revenue in connection with the Petition for Refund in the instant case is final, and not subject to review by mandamus. Second. Plaintiff had a full, complete and adequate legal remedy for the adjudication of the legal questions raised by it other than mandamus against the Board of Finance and Revenue. Third. The action of the Board of Finance and Revenue, being in accordance with and following the interpretation of the statute by the Attorney General of the Commonwealth of Pennsylvania, cannot be reviewed by mandamus.".

At the time of the presentation of the plaintiff's deed for recording, Section 3 of The Realty Transfer Tax Act of December 27, 1951, as amended by the Act of May 29, 1953, imposed a tax upon: "Every person who makes, executes, issues, delivers or accepts any document, or in whose behalf any document is made,

64

executed, issued, delivered or accepted, . . .". Section 2 of the Act defined the word "Document" as: "Any deed, instrument or writing whereby *any lands, . . . within this Commonwealth* . . . shall be granted, bargained, sold, or otherwise conveyed to the grantee, purchaser, or any other person, . . .". (Emphasis supplied). Section 8 of the Act imposed penal sanctions upon any Recorder of Deeds who recorded any document without the proper documentary stamp or stamps affixed thereto.

By Act approved June 1, 1955, P. L. 118, the Legislature reenacted and amended the Act of December 27, 1951 providing, inter alia, as follows: "Section 2. . . . 'Transaction'. The making, executing, delivering, accepting, or presenting for recording of a document. . . Section 3. Every person who makes, executes, delivers, accepts or *presents for recording any document,* or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one (1) percentum of the value of the property represented by such document, which State tax shall be payable at the time of making, execution, delivery, acceptance or presenting for recording of such document . . . Section 2.³ This reenacting and amending act shall take effect June one, one thousand nine hundred fifty-five, *and the tax hereby imposed shall apply to all documents made, execut-ed, delivered, accepted or offered for recording, subsequent to the thirty-first day of May, one thousand nine hundred fifty-three . . .".*[1] (Emphasis supplied).

---

[1] The Act of 1951, as amended by the Act of 1953, expired on May 31, 1953.

The right to sue the Commonwealth for the recovery of money or taxes alleged to have been erroneously paid to it exists only by the grace of the Legislature. Article I, Section 11 of the Constitution of Pennsylvania provides: ". . . Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.". An action against the Board of Finance and Revenue is an action against the State: *Merchants' Warehouse Company v. Gelder et al.*, 349 Pa. 1, 7, 36 A. 2d 444, 447, 448; *Kaufman Construction Company v. Holcomb et al.*, 357 Pa. 514, 55 A. 2d 534; *United States of America v. Board of Finance and Revenue*, 369 Pa. 386, 85 A. 2d 156. Where a State through its Legislature consents to be sued, the modes, terms and conditions of the statute conferring such privilege and authorizing refunds must be strictly construed and followed: *Ford Motor Co. v. Department of Treasury of Indiana et al.*, 323 U. S. 459 (1945); *Georgia Railroad & Banking Co. v. Redwine, State Revenue Commissioner*, 342 U. S. 299 (1952). Cf. *Calvert Distillers Corporation v. Board of Finance and Revenue*, 376 Pa. 476, 103 A. 2d 668; and see 49 Am. Jur., States, Territories, and Dependencies, §97, p. 314.

Pennsylvania, acting through its Legislature, has created by The Fiscal Code of 1929 the Board of Finance and Revenue, to which under §503 of the Code[2]

---

[2] Section 503 of the Act of April 9, 1929, as amended, 72 PS §503, provides as follows:

"The Board of Finance and Revenue shall have the power, and its duty shall be,

"(a) To hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus, or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus, or

claims for taxes or other monies alleged to have been
erroneously paid to the Commonwealth may be made,

other moneys, out of any appropriation or appropriations made for
the purpose, or to credit the account of the person, association,
corporation, body politic, or public officer entitled to the refund. . . .
All such petitions for refund must be filed with the board within
two years of the payment of which refund is requested, or within
two years of the settlement in the case of taxes or bonus, which-
ever period last expires, except

"(1) Where a petition for refund filed by a domestic or foreign
corporation involves the valuation of its capital, stock or in case
of a foreign corporation the valuation of its tangible property for
bonus purposes, or where a petition for refund filed by a bank, title
insurance or trust company involves the valuation of its shares of
stock, such petition must be filed with the board within one year
of the payment of which refund is requested, or within one year of
the settlement of such taxes or bonus, whichever period last expires.

"(2) When the estate upon which any transfer inheritance tax
has been paid shall have consisted in whole or in part of a partner-
ship, or other interest of uncertain value, or shall have been in-
volved in litigation, by reason whereof there shall have been an
overvaluation of that portion of the estate on which the tax has
been assessed and paid, which overvaluation could not have been
ascertained within said period of two years. In such case, the
application for repayment shall be made to the Board of Finance
and Revenue, within one year from the termination of such litigation,
or ascertainment of such overvaluation.

"(3) When a court of record has adjudged a person to be
legally dead, and thereafter, in the settlement of his or her estate,
a transfer inheritance tax shall have been paid on such estate, and,
after such payment has been made, such person shall reappear and
the court shall rescind its order and adjudication. In such case,
the petition to the board shall be filed within six months after the
court shall have rescinded its order and adjudication.

"(4) When any tax or other money has been paid to the Com-
monwealth, under a provision of an act of Assembly subsequently
held by final judgment of a court of competent jurisdiction to be
unconstitutional, or under an interpretation of such provision sub-
sequently held by such court to be erroneous. In such case, the
petition to the board may be filed either prior or subsequent to
such final judgment but must be filed within five years of the pay-
ment of which a refund is requested, or within five years of the

entertained and determined by the Board. Appellant invokes this legislation in support of its claim. Sub-paragraph (e) of §503 expressly provides: "The action of the board on all petitions filed under this section shall be final.". Thus the State as a condition of the privilege conferred, has limited consideration and final determination of the merits of any such claims asserted against it to the Board of Finance and Revenue. As said by Mr. Justice (later Chief Justice) STERN in *Kaufman Construction Company v. Holcomb et al.,* 357 Pa. 514, 55 A. 2d 534, at p. 519, with respect to a contractual claim against the Commonwealth presented to the Board of Arbitration of Claims, a similar tribunal created by the Act of May 20, 1937, P. L. 728, whose decision was likewise made final: ". . . This denial of a right of appeal may seem, on first blush, unduly harsh, but it must be remembered that, as already stated, the Commonwealth is not obliged to entertain claims against it at all. . . .".

In the *Kaufman* case just referred to, where the plaintiff attempted to have the merits of its claim against the Commonwealth reviewed in an action of

---

settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires. The board shall have jurisdiction to hear and determine any petition for refund filed prior to such final judgment only if, at the time of the filing thereof, proceedings are pending in a court of competent jurisdiction wherein the claims of unconstitutionality or erroneous interpretation made in the petition for refund may be established, and in such case the board shall not act upon the petition for refund until the final judgment determining the question or questions involved in such petition has been handed down." As amended, January 19, 1952, P. L. 2178.

§503(b) and §503(c) provide for the hearing and determination of petitions for the remission of penalties imposed. §503(e) making the decision of the Board final is set forth in the body of the opinion.

mandamus after the refusal of its claim by the Board of Arbitration of Claims, Mr. Justice STERN stated, at p. 518: ". . . where a statute expressly provides that there shall be no appeal the scope of appellate review is limited to the question of jurisdiction and the regularity of the proceedings; the merits of the controversy cannot be considered *even though the interpretation given to the facts or the law by the governmental agency* or the court below may have been erroneous. . . .". (Emphasis supplied). And at p. 520: ". . . It is elementary that it [the writ of mandamus] cannot be used to control the exercise of discretion or judgment on the part of a public official or an administrative or judicial tribunal; nor to review or compel the undoing of action taken by such an official or tribunal *in good faith* and in the exercise of legitimate jurisdiction, even though, in fact, the decision rendered may have been wrong; nor to influence or coerce a particular determination of the issue involved; nor to perform the function of an appeal or writ of error even though no appeal or writ of error be permitted by law. . . ." [citing numerous cases]. (Emphasis supplied).

Under the foregoing well settled rule the action of the tribunal must be taken "in good faith". If it acts fraudulently, arbitrarily or extends its own jurisdiction under the statute creating it by erroneous construction thereof, its action is subject to judicial review: *Grime et al. v. Department of Public Instruction of Commonwealth of Pennsylvania et al.*, 324 Pa. 371, 376, 188 A. 337. In *Hotel Casey Company v. Ross et al.*, 343 Pa. 573, 585, 23 A. 2d 737 (1942), where this Court was considering the action taken by the Board of Finance and Revenue, it was stated: ". . . an administrative body cannot violate a statutory mandate even though acting within the *general* jurisdiction conferred upon it by the statute.".

In the *Hotel Casey* case the Board of Finance and Revenue, after the Supreme Court in *Wellsboro Hotel Company's Appeal,* 336 Pa. 171, 7 A. 2d 334 (1939), had held that hotels operating dining rooms for the convenience of their guests were not subject to a payment of certain taxes, refused to follow the Supreme Court's decision and denied a petition for a refund. When the Board in that case considered the petition of the Hotel Casey for a refund, there thus existed no doubt in view of our decision as to the illegality of the payment and the fact that the Commonwealth was not rightfully entitled thereto. At p. 583 Mr. Justice PARKER stated: ". . . Here the writ is not employed in order to interfere with the exercise of a legal discretion by the board, but only to compel it to act according to law and within legal limitations, particularly those defining its jurisdiction. . . . Here relief is sought upon the theory that the board has misconceived the extent of its powers and its duties.". It was held that under the circumstances, §503 (a)(4) of The Fiscal Code made refund of the taxes paid mandatory.

Appellant argues that under language employed in the *Hotel Casey* case to the effect that the Board is not vested with unlimited discretion, the refund sought by it is mandatory because the legislation imposing the Realty Transfer Tax is, as applied to it, unconstitutional. The statement by the Court in *Casey* that the Board does not enjoy unlimited discretion when considered in connection with the decision rendered simply means that the Board's exercise of discretion does not extend to refunds held to be mandatory under §503(a)(4), or, if given broader significance, is quite consistent with the qualification of the rule stated in *Kaufman* that the discretion must be exercised in good faith and not fraudulently, arbitrarily or in an unwarranted enlargement of its power and duties. Other language in the opinion

referred to by appellant was not necessary to the decision of the case and has no authoritative status in view of the later *Kaufman* case where the *Casey* case was referred to and distinguished. Moreover, the second premise on which appellant's argument is based is untenable. It rests merely on the appellant's assertion or assumption that the legislation in question as applied to it is unconstitutional.

In its petition to the Board for refund which was presented prior to the passage of the 1955 Act, and which is attached as an exhibit to the complaint in mandamus, appellant's contention in effect was that the deed in question having been executed, delivered and accepted outside of the Commonwealth, the Board should have held that The Realty Transfer Tax Act of December 27, 1951 was unconstitutional as applied to the transaction. The Realty Transfer Tax Act of 1951 was held constitutional in *Sablosky v. Messner*, 372 Pa. 47, 92 A. 2d 411, but the scope of the Act, that is whether it applied to deeds executed and delivered without as well as within the State, was not an issue in the case and therefore not decided. The express language of the Act imposed liability for the tax with respect to *all deeds whereby any land within the Commonwealth is granted, bargained, sold or otherwise conveyed,* with no limitation as to the place where the deed was executed and delivered. It contained no exception as to deeds executed and delivered outside the Commonwealth. No court of competent jurisdiction had ruled contrary to the interpretation of the Act made by the Board. In its petition appellant cited in support of its position the case of *City Stores Company v. Philadelphia,* 376 Pa. 482, 103 A. 2d 664, but that case involved the interpretation of a *City ordinance* enacted under the limited authority conferred by the Sterling Act of August 5, 1932, P. L. 45, 53 PS §4613 et seq.

However relevant as an argument in an attack upon the constitutionality of the Realty Transfer Tax Act if applied to deeds executed and delivered outside of the Commonwealth, the constitutionality of the State Act in this or any other respect was not involved in the *City Stores* case.[3]

At the time of the disposition by the Board of appellant's petition for refund, the Act of 1955 reenacting and amending the Realty Transfer Tax Act of 1951, was in force. This Act expressly defined the transaction taxed as including the presentation of the deed for recording; and it also provided for retroactive application to all deeds offered for recording subsequent to May 31, 1953, the date on which the earlier legislation expired. Appellant claims that the Board should have declared the Act of 1955 unconstitutional because of its retroactive provision. When the Board disallowed the refund, no court of competent jurisdiction had declared the Act of 1955 unconstitutional in this or any other respect. Moreover, retroactive tax legislation is not per se unconstitutional. As stated in *Shirks Motor Express Corporation v. Messner*, 375 Pa. 450, 462, 100 A. 2d 913 (cert. den. by the U. S. Supreme Court): ". . . The taxing power of the Legislature is very broad

---

[3] In *Federal Deposit Insurance Corporation v. Board of Finance & Revenue of Commonwealth*, 368 Pa. 463, 84 A. 2d 495, where plaintiff instituted an action of mandamus to compel a refund by the Board of Taxes paid on capital stock, plaintiff cited in support of its claim a decision by the Common Pleas of Dauphin County, "a court of competent jurisdiction", rendered subsequent to its payment of the taxes. Although this decision involved a similar tax on capital stock, speaking through Mr. Justice STERN we said at p. 474: ". . . the decision did not involve the Act of 1897 under which they were paid but the Act of June 13, 1907, P. L. 640, and therefore was not a holding, as required by section 503(a)(4) of the Code, that *the statute under which the tax had been paid* had been erroneously interpreted.". (Emphasis supplied).

and includes power to enact taxes which are retroactive in effect as well as the power to retroactively increase taxes. . . .".

In *Sablosky v. Messner,* supra, we said (pp. 58, 59) : ". . . 'It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so. . . . All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them : . . .': Hadley's Case, 336 Pa. 100, 104, 6 A. 2d 874. In Kelley v. Baldwin, Auditor General et al., 319 Pa. 53, 54, 179 A. 736, we said : 'An act may not be declared unconstitutional unless "it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation in our minds": Sharpless v. Mayor, 21 Pa. 147, 164; Tranter v. Allegheny Co. Authority, 316 Pa. 65, 75.'.". The foregoing is as applicable, if not more so, to administrative boards as to courts.

In the absence of any judicial decision interpreting or declaring The Realty Transfer Tax Act of 1951 or the reenacting and amending Act of 1955 unconstitutional in any respect, the Board properly followed the language of the statutes which represented the existing law. We are aware of no case holding, where the action of a governmental agency is made final by statute, that its refusal to declare an Act of the Legislature unconstitutional may be reviewed by mandamus.

Appellant refers to cases where it has been held or said that mandamus will lie where the tribunal has misinterpreted the law. We deem it unnecessary to enter upon a detailed discussion of these cases. It suffices to say that in all of them the question involved was, as in the *Hotel Casey* case, whether a public official or an administrative or judicial tribunal misinterpreted

the law defining his or its powers and duties. No one of the cases cited holds that mandamus will lie to review the interpretation of a law other than the law of its creation, by a governmental agency such as the Board of Finance and Revenue whose action is made final and there has been no interpretation of the law involved by a final decision of a court of competent jurisdiction. The *Kaufman* case is authority to the contrary.

Appellant states that its claim for refund is not made under §503(a)(4) of The Fiscal Code but under the general provisions first set forth in §503(a). Obviously the claim does not fall within §503(a)(4) because appellant does not aver in its petition for refund or in its complaint in mandamus that subsequent to its payment of the tax, the tax legislation in question was interpreted contrary to the Board's interpretation by a final decision of a court of competent jurisdiction, or that there was any case pending involving such interpretation. But we fail to see how appellant's position is bettered if its claim for refund falls within the general provisions of §503(a). These provisions authorize a refund of taxes or monies to which the Commonwealth is not rightfully or equitably entitled, and this authorization extends to all of the differing situations set forth in the four subsections upon the conditions therein specifically set forth. Under subsection 4 as construed in the *Hotel Casey* case, if the petition for refund is timely made and the final decision of a court of competent jurisdiction rendered subsequent to the tax payment determines the question involved favorably to the petitioner, the refund is mandatory. It does not follow that all petitions for refund under §503(a) must be granted. Such absurd result would render meaningless the authorization to the Board "to hear

*and determine*" petitions for refund, and as well the provision of §503(e) that the *action of the Board* "shall be final".

In permitting the prosecution of claims against the Commonwealth the Legislature as a matter of grace may make refunds of taxes paid mandatory as it was held it did in §503(a)(4) under the circumstances presented in the *Hotel Casey* case, or, as a condition to the privilege conferred, the Legislature may leave the disposition of claims for the refund of taxes paid to the discretion and judgment of a governmental agency and prescribe that the latter's action shall be final. Appellant's claim falls within the latter category. Under our decisions the action of the Board of Finance and Revenue may not be reviewed unless the Board has acted fraudulently, arbitrarily or in excess of the powers and duties vested in it. It is not claimed that the Board acted fraudulently, and in following the language of the tax legislation in question which in the absence of a judicial interpretation thereof, represented the existing law, it may not be said that the Board acted arbitrarily or beyond the powers and duties conferred upon it. Therefore the preliminary objection filed to the complaint that the action of the Board in the instant case was final and not subject to review by mandamus was well taken, and this required dismissal of the appellant's action.

This determination makes it unnecessary to consider whether appellant had other adequate remedy which precluded resort to mandamus, or any other ground relied on by the court below in reaching its decision.

Order affirmed.