## Catale v. Rich

*George P. Micacchione,* for plaintiff.
*Charles Garbett* and *Frank Verterano,* for defendants.

McCRACKEN, *P.J.,* August 28, 1980—Presently before the court are preliminary objections filed by defendants, Lawrence and Mary Ellen Rich (hereinafter referred to as Rich) and the Board of Township Supervisors of Mahoning Township (hereinafter referred to as township). Defendant-Department of Environmental Resources has previously been removed from the case on plaintiffs' motion.

Plaintiffs are a group of property owners residing in Mahoning Township, Lawrence County, Pa. Their complaint in equity, although somewhat unclear, appears to allege that the Riches had a dam built on their own property causing the water level of a pond, also located on their own property, to rise. At about the same time, plaintiffs began to notice that their water (which each plaintiff secured from

wells on their own property) had acquired a peculiar taste. Approximately 12 days later, plaintiffs, Albert and Theresa Catale, began to have water rushing through their cellar (allegedly at a rate of 1,000 gallons per minute). This flow apparently abated, then began again with even more vigor one month later. Two days after this renewed flow, the Riches' dam was "opened" by a backhoe and the water thereupon ceased flowing through the Catales' basement. The dam was then reclosed.[1] Plaintiffs further allege that the contamination of their water supply was caused by the raised level of the pond, which forced the water (apparently underground percolating water) to flow through different chambers into their wells. In addition, plaintiffs allege that the township has refused to rectify the situation.

## I. PRELIMINARY OBJECTIONS OF DEFENDANT TOWNSHIP

The township has raised preliminary objections in the nature of a demurrer, a challenge to the jurisdiction of the court in equity, and a motion for more specific pleading. The demurrer raises a number of valid points. Count II of the complaint, which seeks recovery from the township, is based entirely on the township's refusal to act with regard to Rich's dam. Plaintiffs contend that the township is thus violating those sections of The Second Class Township Code of May 1, 1933, P.L. 103, 53 P.S. §65101 et seq., dealing with health and water supply. These sections are codified as 53 P.S. §65729 and 53 P.S. §65731. Both of these sections were

---

1. The complaint is silent as to whether or not this closing was followed by further flooding of the Catales' basement.

added to The Second Class Township Code by the Act of July 10, 1947, P.L. 1481. Significantly, these amendments were added to section 702 of the original act, 53 P.S. §65702. Section 702 does not *require* any action but rather *empowers* the township supervisors to take various actions. When contrasted to the language of section 516 of the act, 53 P.S. §65516, which lists *duties* of the supervisors, the language in these sections is clearly discretionary rather than mandatory. The courts, of course, cannot usurp the powers of a public official by controlling the exercise of discretionary powers: Land Holding Corp. v. Board of Finance and Revenue, 388 Pa. 61, 130 A. 2d 700 (1957). Further, since sections 65729 and 65731 do not impose duties upon the township, it cannot be held liable for a breach of duty to plaintiffs. Plaintiffs have therefore not stated a cause of action with respect to the township and Count II of the complaint must be dismissed.

## II. PRELIMINARY OBJECTIONS OF DEFENDANTS, LAWRENCE AND MARY ELLEN RICH

Still pending are preliminary objections of defendants, Lawrence and Mary Ellen Rich, in the nature of a demurrer and a petition to dismiss for non-joinder of a necessary party.

As discussed above, plaintiffs appear to seek damages solely on the basis of the effects which Rich's dam has had on the underground, apparently "percolating," water[2] in the area. The earliest

---

2. "Percolating" waters are generally considered to include all subsurface waters other than those which flow in underground streams: 5 Powell, The Law of Real Property ¶724.

rule concerning percolating waters was the theory of absolute ownership or unrestricted privilege (also called the English or common law rule), stated in Acton v. Blundell, 12 M. & W. 324, 152 Eng. Rep. 1223 (1843). Under this theory, percolating waters are part of the land in which they are found and the owner of the land is said to have a proprietary interest in such waters: 5 Powell, The Law of Real Property ¶725. This view was adopted in Pennsylvania as early as 1855 in the case of Wheatley v. Baugh, 25 Pa. 528, 1 Casey 528 (1855). This doctrine has been modified only slightly in Pennsylvania, primarily with regard to a landowner seeking to convey such water off his land: Rothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A. 2d 87 (1940). See also, Reinhart v. Lancaster Area Refuse Authority, 201 Pa. Superior Ct. 614, 193 A. 2d 670 (1963).

As a result of the nature of a landowner's interest in percolating waters, actions concerning such waters must be analyzed under the principle that: "'Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence, unavoidable loss is brought upon his neighbor, it is damnum absque injuria'." Chamberlin v. Ciaffoni, 373 Pa. 430, 435, 96 A. 2d 140, 142 (1953), quoting Strauss v. Allentown, 215 Pa. 96, 98, 63 Atl. 1073 (1906).

In thus applying the damnum absque injuria doctrine to underground waters it has been held in Rothrauff v. Sinking Spring Water Co., supra, at p. 132, that:

[W]hen a spring depends for its supply upon filtrations and percolations through the land of an adjoining owner, and in the use of that land for lawful purposes the spring is destroyed, such owner, in the

absence of malice and negligence on his part, is not liable for the damage thus occasioned."

In construing the "negligence" which would be actionable, the courts have protected landowners from liability for unavoidable injury to their neighbors: "Hence the practical inquiry is, first, whether the damage was necessary and unavoidable; secondly, if not, was it sufficiently obvious to have been foreseen, and also preventable by reasonable care and expenditure?" Collins v. Chartiers Valley Gas Co., 131 Pa. 143, 159, 18 Atl. 1012, 1013, 6 L.R.A. 280 (1890). This rule has been reaffirmed numerous times: Reinhart, supra; Bumbarger v. Walker, 193 Pa. Superior Ct. 301, 164 A. 2d 144 (1960).

In practice, such negligence has been found where landowners brought foreign substances upon the land which subsequently polluted the subterranean water, Reinhart, supra; Good v. Altoona City, 162 Pa. 493, 29 Atl. 741 (1894); where landowners, while drilling wells, failed to take normal precautions to prevent salt water from mixing with the fresh water supply through the well, Schlichtkrull v. Mellon-Pollock Oil Co. (No. 1), 301 Pa. 553, 152 Atl. 829 (1930); Collins, supra; and, where a strip mining operation allowed drainage to contaminate the water supply when the drainage could have easily and inexpensively been pumped into another area: Bumbarger, supra.

In the present case, plaintiffs have not challenged Rich's right to construct the dam as a normal use of his property. Their only complaint is that the water pressure built up by the dam has forced the percolating waters into new channels. The only question is whether the damage was "foreseeable" and "preventable" so as to bring it under the rule set forth in Collins. As Chief Justice Lewis recognized

in Wheatley, supra, "percolations spread in every direction through the earth, and it is impossible to avoid disturbing them without relinquishing the necessary enjoyment of the land." 25 Pa. at 532. Virtually any construction or excavation will, in some way, affect these percolations. However, plaintiffs here have given no indication that any reasonable man could possibly foresee their present damages as consequences flowing from the erection of a dam. The result which occurred (if indeed caused by the dam) does not appear to be so obvious as to be foreseeable. Furthermore, it is clear that the Riches could not have avoided the damage other then completely waiving their right to a reasonable use of their property. The claim thus fails to meet the requirements of Collins and must therefore be considered damnum absque injuria.

## ORDER

Now, August 28, 1980, defendant-Mahoning Township's preliminary objection is sustained and Count II of the complaint is dismissed for failure to state a cause of action versus defendant township.

The preliminary objection of defendants-Rich is sustained and the action against them is dismissed for failure to state a cause of action.